# United States Court of Appeals FILED

## For the Eleventh Circuit

No. 08-13801

District Court Docket No.
06-00984-CV-J-16TEM

2009 AUG -6 11:35
FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Jun 18, 2009

THOMAS K. KAHN
CLERK

ROBERT TRAMMELL,

    Plaintiff-Appellant,

versus

BRUCE A. THOMASON,
in his official capacity as Chief of Police of the
Jacksonville Beach Police Department, Jacksonville
Beach, Florida,
RICHARD KEITH DOROUGH,
individually,
CITY OF JACKSONVILLE BEACH, FL,

    Defendants-Appellees.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
    Deputy Clerk
    Atlanta, Georgia

---

Appeal from the United States District Court
for the Middle District of Florida

---

## J U D G M E N T

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by
reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
AUG 0 4 2009
U.S. COURT OF APPEALS
ATLANTA, GA.

Entered:        June 18, 2009
For the Court:  Thomas K. Kahn, Clerk
        By:    Patch, Jeffrey

[DO NOT PUBLISH]

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 18, 2009
THOMAS K. KAHN
CLERK

No. 08-13801

D. C. Docket No. 06-00984-CV-J-16TEM

ROBERT TRAMMELL,

Plaintiff-Appellant,

versus

BRUCE A. THOMASON, in his
official capacity as Chief of Police of
the Jacksonville Beach Police
Department, Jacksonville Beach,
Florida, RICHARD KEITH DOROUGH,
individually, CITY OF JACKSONVILLE
BEACH, FL,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Florida

(June 18, 2009)

Before TJOFLAT, ANDERSON and STAPLETON,* Circuit Judges.

---

* Hon. Walter K. Stapleton, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

STAPLETON, Circuit Judge:

Appellant Robert Trammell ("Trammell") brought this action pursuant to 42 U.S.C. § 1983 against a state law enforcement officer and the City of Jacksonville Beach, Florida, asserting that his Fourth and Fourteenth Amendment rights were violated when he was seized with excessive force by a "K-9" police dog. The District Court granted the officer's and the City's motions for summary judgment. We will affirm the District Court's determination with respect to the City. However, because we find that a material dispute of fact exists as to whether the law enforcement officer failed to remove the police dog promptly after discovering that it had bitten the wrong person and because we conclude that such conduct would foreclose official immunity for the officer, we will reverse the District Court's grant of summary judgment with respect to the officer.

## I. Facts and Procedural Background

### A. The Undisputed Facts

On the evening of July 11, 2003, Robert Trammell ("Trammell"), a fifty-seven year old Caucasian male, was visiting a friend, Henry Cooper ("Cooper"), at Cooper's townhouse in Duval County, Florida. At around 10 p.m., Trammell stepped outside into Cooper's backyard to make a telephone call. The small

2

backyard was surrounded by a six-foot wooden security fence and was very dark. While he was looking up a number on his phone, Trammell was suddenly knocked to the ground and bitten on his throat by a police dog.  As he struggled to remove the dog, the dog repositioned itself and bit him multiple times on the throat.  He was rushed to the hospital in an ambulance.  He required an eighteen day stay, four operations, and incurred $147,514.82 in medical expenses for his severe injuries.

On the same evening, the Atlantic Beach Police Department received a call at approximately 9:17 p.m. from a woman reporting that her sister's ex-boyfriend, Robert Dillard ("Dillard"), was attempting to "kick-in" the sliding glass door in her home.  She described Dillard as a twenty-three year old African-American male.  Officers Douglas Paul Howell, Jr., and Shannon R. Hartley from the Atlantic Beach Police Department were dispatched to the house.  When they arrived at the scene, they learned that Dillard had fled on foot and called for assistance in tracking him.

Because the Atlantic Beach Police Department did not own any helicopters or have a K-9 unit of its own, the Jacksonville Sheriff's Office deployed a helicopter and one of K-9 units, consisting of Officer Dorough, a K-9 handler, and

his police dog, a Belgian Malinois called Yacco.[1]

Officer Hartley remained near the scene of the attempted break-in while Officer Howell, Officer Dorough and Yacco began to search for Dillard. They were joined by Officer Theron Golleher. Officer Dorough was informed that Dillard was a twenty-three year old African American male, that he had two outstanding misdemeanor warrants, and that he was suspected of committing a residential burglary.

When Officer Dorough commenced the search, he placed Yacco on a leash. He held the leash in his right hand and his flashlight in his left hand. Officers Howell and Golleher followed behind as he and Yacco began their ground search for Dillard at his last known location. Yacco indicated that he "found" something by becoming very still when he reached the outside back wall of the wooden fence enclosing Cooper's residence.

Cooper's yard was dark, and Officer Dorough could not see through the six-foot security fence. For tactical reasons, he chose to remove part of the wooden

---

[1]Yacco had been purchased by the City in 1998 after it was established that he met certain standards for personality and prey instincts. Prior to being purchased, he had completed police dog training in Holland. He had been trained in the "bite and hold" technique, in which the dog bites the first body part he comes to when apprehending the suspect. Doc. 71 at 5. At the time of the incident, Yacco had approximately 45 apprehensions that included biting the suspect. He had never previously bitten anyone in the head or neck, nor had he previously bitten the wrong suspect, other than on one occasion which was the result of an officer's error during a training exercise.

4

fence and look through it, rather than look over it.  He quickly shined his light through the opening and saw no one.  He found a spot on the fence that felt like a gate and pulled out a few planks so he and Yacco could enter.

## B. The Officers' Version of the Remainder of the Event

According to Dorough, he entered Cooper's yard with Yacco on his leash. Officers Golleher and Howell entered Cooper's yard shortly afterward.  Dorough claims that, before he entered the backyard, he shouted two announcements or warnings of his presence and intention to enter with Yacco, with each warning followed by a five to fifteen second interval.  Officers Golleher and Howell, who were following behind, testified that they heard Officer Dorough make at least one announcement.[2]  After hearing no response to his warnings, Dorough signaled to Yacco to enter Cooper's backyard.

Dorough felt Yacco's leash tighten as he followed the dog into the yard. Upon entering Cooper's backyard, Dorough saw that Yacco was engaged with someone who he assumed was the suspect.  The individual was lying face down on the ground inside the fence to his right.  Dorough yelled, "Let me see your hands!" The individual rolled onto his side and wrapped his arms around Yacco.  Dorough

---

[2]The record does not indicate whether these officers heard Dorough simultaneously give an announcement and enter, or whether there was a waiting period after the announcement.

saw then that Yacco had bitten the individual on the throat, and he also saw for the first time that the person was a Caucasian male. Dorough asserts that he immediately yelled to Trammell to let go of Yacco while giving Yacco the verbal command "stand still" to release his bite. Dorough claims that Yacco immediately responded to the release command. Officer Golleher indicated that, when he entered Cooper's backyard, he saw Dorough lifting the dog away from Trammell.

## C. The Facts in the Light Most Favorable to Trammell

Prior to being bitten, Trammell did not hear or see any sign of police activity that would have alerted him to the presence of the dog. He could hear the neighbors on either side of the backyard making noise, but he did not hear any police warnings, nor did he hear a police helicopter. After being initially knocked to the ground, he was eventually able to sit up and pull the dog off of his throat by holding it by the scruff of its neck. At some point, police officers arrived on the scene with flashlights. They stood close enough to intervene, but they made no move to remove the dog until Cooper, alerted by the noise, came running out of the house and made them remove Yacco. Cooper asserts that, when he came out of the house, he saw Trammell sitting up and holding a large dog at bay by the scruff of its neck while the dog snapped at his face. Trammell's shirt had been ripped off of his back and shredded to his waist. His hands were shaking with the

6

effort of holding back the dog. Three officers stood alongside the fence, next to a waist-high board that had been laid across the entryway. They each had flashlights trailed on Trammell but made no move to remove the dog. Only after Cooper screamed that he was going to kill the dog did one of the officers say, "get the dog off of him." Another officer then reached down and grabbed the dog's leash off the ground near his foot and forcefully pulled it away from Trammell.

## D. The District Court Proceedings

One count of Trammell's complaint in the District Court was brought pursuant to 42 U.S.C. § 1983 against Officer Dorough in his individual capacity alleging violations of the Fourth and Fourteenth Amendment's proscription against unreasonable seizure. Two counts were filed against the City and Bruce A. Thomason in his official capacity as Chief of Police claiming liability under 42 U.S.C. § 1983 for Dorough's Fourth and Fourteenth Amendment violations.[3]

In support of his motion for summary judgment, Trammell argued that his Fourth and Fourteenth Amendment right to be free from unreasonable seizure had been violated (1) when Dorough released Yacco with no warning or with

---

[3]The complaint included two additional counts relating to alleged violations of state law concerning liability for damage done by dogs, and a count against the City for negligence under Florida's common law. The District Court dismissed without prejudice the state law negligence claim and dismissed with prejudice the state law statutory claims. As these holdings have not been appealed, and are not relevant to the remainder of Trammell's claims, we need not discuss them further here.

7

inadequate warning and (2) when Dorough failed to remove Yacco promptly upon realizing that Trammell was not Dillard. With respect to his first theory of liability, the District Court concluded that the record evidence viewed in the light most favorable to Trammell indicated that Dorough "entered the residential backyard while simultaneously giving a K-9 warning." Doc. 71 at 21. Nevertheless, the Court concluded that his entry and the subsequent attack violated Trammell's right to be free from unreasonable seizure. It ultimately granted summary judgment against Trammell, however, on the ground that the right violated was not "clearly established" at the time of the attack and that Dorough was accordingly entitled to official immunity.

With respect to Trammell's second claim, the District Court found that the record viewed in the light most favorable to him indicated as follows:

> Even upon realizing that Yacco was not biting and holding the actual suspect and was off of his leash, Officer Dorough did not immediately command Yacco to release Trammell. Officers Dorough, Golleher and Howell did not immediately aid Trammell until Trammel's [sic] friend Cooper rushed out of his house and demanded that they do so. Yacco only released Trammell after Officer Dorough physically removed the dog from Trammell's person instead of by responding to Officer Dorough's commands as he was trained to do.

Doc. 71 at 21.

The Court then concluded that "[g]iven these facts, a reasonable jury could

8

conclude that . . . use of the canine in the manner prescribed constituted

unreasonable and excessive use of force in violation of Plaintiff's constitutional

rights under the Fourth Amendment." *Id.* (quoting *Reese v. Coxwell*, No. 3:04-

CV-17, 2006 WL 680811 at *3 (N.D. Fla. March 13, 2006)).

The District Court nevertheless entered summary judgment in Dorough's

favor because

> [T]here [was] nothing in the record indicating that Officer Dorough's
> conduct on July 11, 2003, was so beyond the hazy border between
> excessive and acceptable force that he should have known he was
> violating the Constitution. This was not a case in which Officer
> Dorough purposely "sicced" Yacco on a compliant and unsuspecting
> suspect or one where Officer Dorough let Yacco bite Plaintiff for an
> extended period of time. Therefore, based on the facts of the instant
> case, the Court finds that Officer Dorough is entitled to qualified
> immunity on Trammell's Section 1983 claim.

Doc. 71 at 24.

Finally, the District Court held that Trammell had failed to tender evidence

sufficient to support his claim that the City was liable for failing to train Dorough.[4]

The Court noted that a city can be held responsible for a failure to train police

officers only if that failure to train amounts to "deliberate indifference" to the

constitutional rights of persons with whom police come into contact. *Id.* at 25.

---

[4]The Court properly treated the claim against Chief Thomason in his official capacity as
equivalent to the claim against the City. We do so as well.

9

The District Court determined that Trammell had failed to meet this standard.[5]

## II. Claims Against Dorough

As we have indicated, the summary judgments favoring Dorough rest on official immunity. "Qualified immunity protects government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Priester v. City of Riviera Beach,* 208 F.3d. 919, 925 (11th Cir. 2000) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). It "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 129 S. Ct. 808, 815 (2009).

We apply a two-part test to determine whether a defendant, acting within the scope of his discretionary authority, is entitled to official immunity at the summary

---

[5]The District Court held in the alternative that, since Officer Dorough was entitled to official immunity on the claims against him, the City could not be liable on the related claims against it. We agree with Trammell that this is not the case. While a constitutional violation on the part of a municipal agent is a predicate to municipal liability under § 1983, *see City of Los Angeles v. Heller,* 475 U.S. 786, 799 (1986), the availability of official immunity to the agent is irrelevant to municipal liability. *See Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit,* 507 U.S. 163, 166 (1993).

10

judgment stage: we determine whether the plaintiff has tendered a *prima facie* case of a deprivation of a constitutional right and, if so, whether that right was "clearly established" at the time of the violation. *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *Cottone v. Jenne,* 326 F.3d 1352, 1358 (11th Cir. 2003).

## A. The Failure to Warn Claim

Trammell insists that there is a material dispute of fact as to whether Dorough gave any warning and, further, that even a simultaneous warning leaving no time for identification or surrender would not have rendered the seizure reasonable. We agree with Trammell that there is a material dispute of fact with respect to whether and when any warning was given.[6] That evidentiary conflict is not, however, important to our analysis because we may assume for present purposes, without deciding, that a constitutional violation occurred when Yacco seized Trammell.

Appellees' brief, while insisting that the District Court properly found official immunity with respect to this claim, does not take issue with its conclusion

---

[6]Trammell testified that while in the small residential backyard he heard no warning and that under the circumstances he would have heard one if it had been given. We conclude that a jury could find that none was given. *See Vathekan v. Prince George's County,* 154 F.3d 173, 180 (4th Cir. 1998) ("If a warning is not given, then a witness will not hear one. A juror could reasonably conclude that if certain witnesses did not hear a warning, then *no* warning was given, even if other witnesses testify to a warning.") (emphasis in original). We also agree with Trammell that he did not waive this contention.

11

that a jury could find a violation of Trammell's right to be free from unreasonable

seizure. Given this circumstance and our conclusion that the right found by the

District Court to have been violated was not "clearly established" at the time, we

exercise our discretion not to review the District Court's determination that a

constitutional violation occurred. *Pearson,* 129 S. Ct. at 813.

Accordingly, we now turn to whether Dorough violated a clearly established

constitutional right. A city employee is entitled to official immunity for a § 1983

violation unless the plaintiff can demonstrate that the official's actions violated

clearly established constitutional law "of which a reasonable person would have

known." *Priester,* 208 F.3d at 926; *Storck v. City of Coral Springs,* 354 F.3d

1307, 1313 (11th Cir. 2003).

In determining whether a constitutional right is clearly established, the

salient question is whether the state of the law at the time of the incident gave

officials fair warning that their behavior was unlawful. *Hope v. Pelzer,* 536 U.S.

730, 741 (2002).

> For a constitutional right to be clearly established, its contours 'must
> be sufficiently clear that a reasonable official would understand that
> what he is doing violates that right. This is not to say that an official
> action is protected by qualified immunity unless the very action in
> question has previously been held unlawful, see *Mitchell* [v. *Forsyth,*
> 472 U.S. 511,] 535, n.12, 105 S.Ct. 2806, 86 L.Ed.2d 411; but it is to
> say that in the light of pre-existing law the unlawfulness must be

12

apparent.'

*Id.* at 739 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).

Official immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Long v. Slaton,* 508 F. 3d 576, 584 (11th Cir. 2007) (quoting *Malley v. Briggs,* 475 U.S. 335, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986)). An official is entitled to official immunity "unless their 'supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances.'" *Id.* (quoting *Pace v. Capobianco,* 283 F.3d 1275, 1282 (11th Cir. 2002)).

"[I]n this Circuit, the law can be 'clearly established' for [official] immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Wilson v. Strong,* 156 F. 3d 1131, 1135 (11th Cir. 1998) (quoting *Jenkins v. Talladega City Bd. of Educ.,* 115 F.3d 821, 826 n.4 (11th Cir. 1997). Thus, in order to show that Dorough is not entitled to official immunity, Trammell must be able to point to earlier case law from the Eleventh Circuit, the Florida Supreme Court, or from the

13

United States Supreme Court that is "materially similar . . . and therefore provided clear notice of the violation" or to "general rules of law from a federal constitutional or statutory provision or earlier case law that applied with 'obvious clarity' to the circumstances" and established clearly the unlawfulness of Dorough's conduct. *Long,* 508 F.3d at 584. Trammell has been unable to point us to such a case or law and, accordingly, we must conclude that Dorough is entitled to immunity.[7]

While there was case law in July of 2003 from the Fourth Circuit finding a constitutional violation where a police dog similarly trained was released without an adequate warning,[8] we have found no case from our Court, the Supreme Court of the United States, or the Supreme Court of Florida which so holds. While Trammell insists that *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1553 (11th Cir. 1989), gave Dorough fair notice that a warning was required, it does not clearly establish the relevant right.

---

[7]Trammell argues that he is not required to point to "materially similar" case law from this circuit after the Supreme Court's decision in *Hope,* 536 U.S. at 739. We cannot agree. *Hope* states that a plaintiff need not point to a prior case holding that the exact conduct in question was impermissible. It is silent in regard to the issue of whether case law from another circuit alone may be sufficient to put an officer on notice of the impermissibility of his conduct. Accordingly, we remain bound by our circuit law on this issue.

[8]*See Vathekan*, 154 F.3d at 180; *Kopf v. Wing*, 942 F.2d 265 (4th Cir. 1991).

14

*Kerr* considered whether a police department's K-9 policy was unconstitutional in light of allegations that the dogs were improperly trained and supervised. As the factual basis for the claim, the plaintiffs introduced evidence that the dogs had an impermissibly high bite-to-apprehension ratio, were used on an unnecessarily wide range of crimes, and had been deployed without warning on individuals who did not resist arrest or who had already surrendered. On appeal, the Kerr Court determined that the city had failed to establish a adequate standards for the K-9 unit. The Court further determined that the unconstitutional character of the K-9 unit's apprehensions was plainly obvious to city officials, who were deliberately indifferent to the need to take corrective action.

*Kerr's* holding does not establish that a canine warning is required before the release of a police dog. While some of the plaintiffs in *Kerr* alleged that they had been bitten without a warning, the opinion focused on the city's training program and the high number of bites in the unit. It contained no legal analysis or discussion of the warning issue and thus cannot be interpreted as putting Dorough on notice that his conduct was constitutionally impermissible.

In the alternative, Trammell asserts that Dorough is not entitled to qualified immunity because the unlawfulness of his actions was readily apparent, even in the absence of case law discussing his behavior. A "narrow exception" to the

15

requirement of particularized case law exists in excessive force cases where "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." *Priester,* 208 F.3d. at 926 (quoting *Smith v. Mattox,* 127 F.3d 1416, 1419 (11th Cir.1997)).

> To come within the narrow exception, a plaintiff must show that the official's conduct "was so far beyond the hazy border between excessive and acceptable force that [the official] had to know he was violating the Constitution even without caselaw on point." *See Smith,* 127 F.3d at 1419. This test entails determining whether "application of the [excessive force] standard would inevitably lead every reasonable officer in [the Defendants'] position to conclude the force was unlawful." *See Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1559 (11th Cir.1993), *as amended,* 14 F.3d 583 (11th Cir.1994); *see also Jones v. City of Dothan,* 121 F.3d 1456, 1460 (11th Cir.1997).

*Id.*

We are unpersuaded that Dorough's conduct lies so far beyond the border of permissive and excessive conduct that every reasonable officer in Dorough's position would have concluded that his behavior was unlawful. Accordingly, we will affirm the District Court's determination that Dorough is entitled to qualified immunity for his conduct in allegedly releasing Yacco without a warning.

## B. The Failure to Remove Yacco Promptly

With respect to Trammell's second claim against Dorough, we agree with

16

the District Court's description of the record viewed in the light most favorable to
Trammell and with its conclusion based on the record so viewed that a seizure
with excessive force occurred. Given that version of the events, we find our prior
decision in *Priester* helpful on both the issue of whether a violation occurred and
the issue of whether official immunity is available to Dorough.

In *Priester,* officers used a K-9 dog to track the scent of a robber leading
away from the scene of the robbery. The plaintiff hid from the officers in a canal
but voluntarily stood up and put his hands in the air when the officers shined a
light into the canal. The officers told the plaintiff to lie down or else they would
release the dog. The plaintiff complied, but the handler released the dog anyway.
The plaintiff testified that, although he begged the officers to call the dog off, the
defendants stood and watched "for an eternity" while the dog continued to attack
and bite the plaintiff. *Id.* at 924.

This Court held not only that the officer who deliberately sicced the dog on
the victim engaged in a violation of clearly established constitutional law, but also
that an accompanying officer acted objectively unreasonably in failing to intervene
to stop the use of force. We further held that official immunity was not available
to the officers:

Nor do we think particularized case law is necessary to overcome

17

Defendant Cushing's claim of qualified immunity. That a police officer had a duty to intervene when he witnessed the use of excessive force and had the ability to intervene was clearly established in February 1994. *See Byrd v. Clark,* 783 F.2d 1002, 1007 (11th Cir.1986) ("If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983."); *see also Post,* 7 F.3d at 1560 ("A police officer has the duty to intervene when another officer uses excessive force."); *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1441-42 (11th Cir.1985); *Harris v. Chanclor,* 537 F.2d 203, 206 (5th Cir.1976). When we defer to the jury's implicit fact finding, the excessive force in this case was obvious and was such that every reasonable officer would have known that it was clearly in violation of Priester's constitutional rights. Cushing observed the entire attack and had the time and ability to intervene, but he did nothing. No particularized case law was necessary for a reasonable police officer to know that, on the facts of this case and given that the duty to intervene was clearly established, he should have intervened.

*Id.*

*Priester* establishes that, under certain circumstances, failure to intervene in a dog attack is an obvious use of excessive force. As in *Priester,* Trammell insists that Officer Dorough permitted his dog to engage in an attack after it became apparent that he was not the suspect and posed no apparent danger to the officers. This fact alone is sufficient to establish that Dorough allegedly violated a clearly established constitutional norm, even if Dorough did not deliberately "sic" Yacco on Trammell.

We further note that, viewing the record in the light most favorable to

18

Trammell, the attack lasted for a significant period of time. While Dorough testified that he immediately called Yacco off once he realized his mistake, the record evidences a number of things that transpired between the commencement of the attack and its conclusion which could lead a factfinder to conclude that the officers' reactions were not instantaneous. Cooper testified, for example, that the attack continued long enough for him to realize that there were flashlights in his backyard and to go to the back porch to investigate the source of the lights. When he arrived at his back screen door, he could see that Trammell's shirt had already been torn off of his back and shredded to his waist. He had time to observe the officers standing and staring at Trammell, to threaten to kill the dog, and to start to move across the yard toward Trammell before Yacco was removed by the officers. Despite the fact that Trammell has been unable to put a precise time frame on the attack, his testimony and that of Cooper is sufficient to raise the factual possibility that the attack continued for some significant length of time.

If a jury concludes that the officers failed to stop the attack promptly after they became aware that Trammell was not the suspect, *Priester* compels the conclusion that Officer Dorough engaged in an obvious violation of Trammell's rights by failing to stop Yacco's attack. Accordingly, the District Court erred in awarding summary judgment to Dorough on this issue. We will reverse.

19

### III. Claims Against the City

Before us, Trammell makes a single claim against the City.  He contends that the evidence would support a finding that the City had a policy or practice "approv[ing] warnings that [are] simultaneous to the deployment of the dog," thus requiring no waiting period after the warning of identification or surrender.

The City's written regulations do not speak to the issue of the timing of warnings, and Trammell's claim is based exclusively on the testimony of Dorough's supervisor.  He testified that, although not required by the regulations, it was standard practice at the time for an officer to give two warnings before deployment, thus providing an opportunity for identification or surrender.  This, of course, does not support Trammell's argument.  Trammell insists, however, that the supervisor gave conflicting testimony that does.  We find no inconsistency. The testimony referenced by Trammell was that a hypothetical officer who gave a warning simultaneous to deployment would not be in "violation of Jacksonville Beach Police Department regulations" because they did not speak to the timing issue.  Doc. 54 at 222-24.  Accordingly, the most that can be said is that the record, viewed in the light most favorable to Trammell, indicates that the City had no policy foreclosing simultaneous warnings.

In order for a plaintiff to hold a government entity responsible for an alleged

20

violation of his constitutional rights, the plaintiff must establish that the violation resulted from a policy or custom of the city. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 125, n. 2, 108 S. Ct. 915, 925 (1988) ("We have held that Congress intended to hold municipalities responsible under § 1983 only for the execution of official policies and customs, and not for injuries inflicted solely by employees or agents."). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton,* 117 F.3d 488, 489 (11th Cir. 1997) (citing *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1479-80 (11th Cir.1991)). "A custom is a practice that is so settled and permanent that it takes on the force of law." *Id.* (citing *Monell v. Department of Social Services,* 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2035-36, 56 L. Ed. 2d 611 (1978)).

In order to establish a municipality's liability for an officer's actions, the plaintiff must show that the act is one which the municipality has officially "sanctioned or ordered." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234,1243 n.13 (11th Cir. 2003) (quoting *Brown v. City of Clewiston*, 848 F.2d 1534, 1538 (11th Cir. 1988)). *See also Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986) (holding that municipal liability under § 1983 attaches "where – and only where – a deliberate choice to follow a course of action is made from

21

among various alternatives by the official or officials responsible for establishing a final policy with respect to the subject matter in question."). Trammell has not tendered evidence from which a reasonable factfinder could infer that the City had a policy sanctioning or ordering simultaneous warnings and deployments. Nor has he come forward with any other evidence demonstrating that officers regularly engaged in the practice of providing only a warning simultaneous to the deployment. We will therefore affirm.

## V. Conclusion

We will affirm the District Court's summary judgment in favor of the City. While we agree with the District Court that Dorough is entitled to official immunity with respect to his action in deploying Yacco, we will reverse the summary judgment in favor of Dorough and remand for further proceedings with respect to his alleged failure to promptly remove Yacco.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By:
Deputy Clerk
Atlanta, Georgia

22